**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
CAMBRIDGE WHO'S WHO PUBLISHING, INC.
   a New York corporation,

                    Plaintiff,

v.

XCENTRIC VENTURES, LLC,
   an Arizona limited liability company,
   d/b/a RIP-OFF REPORT, and/or
   RIPOFFREPORT.COM, and/or
   BAD BUSINESS BUREAU, and/or
   BADBUSINESSBUREAU.COM

and

EDWARD MAGEDSON, a/k/a Ed Magedson,
   an individual,

                    Defendants.
-------------------------------------------------------------x

**FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y**

★ DEC 12 2006 ★

**LONG ISLAND OFFICE**

**COMPLAINT**

**CV-06 6590**

(SJ)

**SEYBERT, J.**

**BOYLE, M.**

Cambridge Who's Who Publishing, Inc. v. Xcentric Ventures, LLC et al    Doc. 1

Plaintiff, CAMBRIDGE WHO'S WHO PUBLISHING, INC. (hereinafter "Plaintiff" or "Cambridge"), by counsel, as and for its Complaint, states as follows:

### INTRODUCTION

1.    This action arises out of unlawful activity perpetrated by Defendants against the Plaintiff and others.

2.    As more fully alleged herein, Defendants operate an extortion scheme centered around their Internet publication of defamatory materials concerning Plaintiff and their effort to extract "protection money" in order that Plaintiff and Defendants' other victims might be portrayed in a positive light on Defendants' Internet websites.

3.    In this action, Plaintiff seeks damages, injunctive and other relief arising out of Defendants' wrongful, tortious and illegal acts against Plaintiff as described more particularly below.

### JURISDICTION

4.    This Court has original jurisdiction under 28 U.S.C. § 1331(a) (federal question) by reason of Plaintiff's claims under the federal Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. §§ 1961 *et seq.* (hereinafter the "RICO Act").

5.    Original jurisdiction is also based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, since Plaintiff is a resident of New York, Defendants are residents of Arizona, and the amount in controversy is greater than $75,000.00 exclusive of interest, attorneys' fees and costs.

6.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

7.    Defendants are subject to the jurisdiction of this Court under New York's Long Arm Statute, N.Y. Civ. Prac. L. & R. § 302, because:

    (a)    they transact business within the state of New York and contract to supply goods and services in the state of New York; and/or

    (b)    they have committed tortious acts without the state of New York causing injury to persons or property within New York and regularly do and solicit business, or engage in other persistent courses of conduct, or derive substantial revenue from goods used or consumed or services rendered, in the state of New York; and/or

    (c)    they have committed tortious acts without the state of New York causing injury to persons or property within New York and expect or should reasonably expect

the act to have consequences in the state and they have derived and continue to derive substantial revenue from interstate or international commerce.

## VENUE

8.     This Court is a proper venue under 28 U.S.C. §§ 1391(b) and 1391(c) in that a substantial part of the events giving rise to the claims asserted herein occurred in and are causing injury in the County of Nassau, New York.

9.     Plaintiff's principal places of business are in this judicial district.

10.     Defendants intentionally and/or recklessly published defamatory information about Plaintiff, a New York corporation and New York resident, and published same via the Internet within Nassau County, New York.

11.     Defendants intentionally and/or recklessly published defamatory information and clearly directed said information at a corporation in New York via their Internet websites regarding Plaintiff's business, resulting in significant injury and harm to Plaintiff and its reputation. The bulk, if not all, of the harm has occurred and will continue to occur in New York.

12.     Defendants' activities as hereinafter described constitute an illegal pattern of racketeering activity which has harmed and continues to harm Plaintiff's business activities.

## PARTIES

13.     Plaintiff is a corporation duly organized under the laws of the State of New York, with its principal places of business in Nassau County, New York.

14.     Upon information and belief, Defendant XCENTRIC VENTURES, LLC (hereinafter "Xcentric"), is a limited liability company duly organized under the laws of the State of Arizona, with its principal place of business in the State of Arizona.

15.    Xcentric does business under a variety of names including, but not limited to, RIP-OFF REPORT, and/or RIPOFFREPORT.COM, and/or BAD BUSINESS BUREAU, and/or BADBUSINESSBUREAU.COM.

16.    Upon information and belief, Defendant EDWARD MAGEDSON, also known as ED MAGEDSON (hereinafter "Magedson"), is a resident of the State of Arizona.

17.    Magedson is a principal and managing official of Xcentric and personally directed and continues to direct the activities which are the subject of this action.

18.    Xcentric is the registered owner of the Internet domain names "ripoffreport.com" and "badbusinessbureau.com." Both domain names resolve to a website operating under the name "Rip-off Report.com" (hereinafter this website is referred to as the "Rip-off Website").

19.    Xcentric and Magedson have created, and continue to maintain and publish, the Rip-off Website knowing that it is available for access to, and will be visited by, persons in New York, throughout the United States and worldwide.

20.    Upon information and belief, Magedson is the founder, editor, publisher and promoter of the Rip-off Website and has controlled and directed the activities of Xcentric and the Rip-Off Website in terms of their operation and content.

21.    Upon information and belief, Magedson derives significant income from his activities, operation and ownership of Xcentric and the Rip-Off Website.

## GENERAL ALLEGATIONS

22.    Plaintiff Cambridge is a business entity which has its origin dating back to 1997. It currently employs over 200 individuals. Cambridge publishes the "Cambridge Who's Who" registry. Individuals joining the registry are included in a biographical compilation highlighting each individual's company, expertise, and achievements. Its members have access to a high

quality networking resource for job recruitment, career enhancement and new business development. Currently, over 200,000 executives, professionals and entrepreneurs are members. Tens of thousands of individuals enroll as new members every year. Members are included from virtually every state and many foreign countries. The registry is published in hardcover format (approximately 30,000 copies annually), and the data is available to members both online from Plaintiff's website and in CD-ROM format. Online access to the registry allows electronic networking among members.

23.     Plaintiff spends millions of dollars each year promoting and selling its products and services.

24.     As a means to promote their products and services, and to facilitate member registration and networking, Plaintiff created its own Internet website at the domain name "cambridgewhoswho.com."

25.     Consumers can use Internet search engines such as, but not limited to, Google.com, MSN.com, Yahoo.com and Ask.com to locate Plaintiff's website.

26.     Due to the marketing activities of the Defendants, actual and potential customers receive search engine results which prominently feature links to one or more reports on the Rip-off Website. Consumers following the link(s) to the Rip-off Website are referred to pages of that website containing information regarding the Plaintiff which is materially false, deceptive and defamatory.

27.     Notwithstanding their commercial activities and the illegal and wrongful acts perpetrated by means of the Rip-off Website, Defendants hold themselves out to the consuming public as a consumer advocacy group. On the Rip-off Website, they claim to be a "worldwide

consumer reporting website and publication, by consumers for consumers" to file and document consumer complaints about "companies or individuals who rip off consumers."

28.     Rather than being a bona fide consumer advocacy source, Defendants' creation, publication and maintenance of the Rip-off Website are part of an elaborate, large-scale scheme to extort money from legitimate businesses by forcing them to seek relief from the bad publicity they receive due to the Defendants' high profile publication of the materially false, deceptive and defamatory information about Plaintiff and other businesses which are featured on the Rip-off Website.

29.     The materially false, deceptive and defamatory reports regarding the Plaintiff and other business entities receive high placement on the many search engines as a result of intentional alteration of the reports featured on the Rip-off Website   Defendants are able to achieve such high search engine placement by including Plaintiff's and other businesses' names and trademarks in the captions of the website pages, in the page titles, and in metatags. Metatags are hidden HTML source code on Internet websites which, together with captions and page titles, are used by Internet search engines to prioritize placement of the links to the universe of web pages they search.  By placing Cambridge's name in these locations, Defendants are able to assure higher placement among search engine results than would occur in the absence of such information.

30.     In operating the Rip-off Website, Defendants encourage individuals to submit reports critical of businesses with whom they have dealt.  The Rip-off Website enables users to submit "rip-off reports" about specific businesses.  These reports are submitted for no charge. Defendants claim that they publish these reports without editing on the Rip-off Website, where they are indexed by company name and broad industry categories.

31.     Upon information and belief, Defendants exercise editorial control over the content of the Rip-off Website through one or more or the following actions:

a) Defendants include additional language which they add to complaints to imply that the company named in such complaint is "ripping off" consumers.

b) Defendants often tailor and rewrite the complaints themselves, adding words such as "ripoff," "dishonest," and "scam," notwithstanding the nature of the complaint, after which Defendants have someone anonymously post the complaint on Defendants' website.

c) Defendants create fictional, false and defamatory complaints themselves, which are then attributed to people with false names or "anonymous" titles from fictional locations around the United States.

d) Once complaints from consumers are received, Defendants review them and actively select which complaints to publish on the Rip-off Website.

e) In Defendants' selection process, they include a large number of negative comments but generally omit positive comments.

32.     Defendants' publication of these consumer complaints is with reckless disregard for the truth as Defendants do not verify such complaints for accuracy. Instead, they simply publish the chosen negative, fabricated and edited complaints.

33.     The posting of multiple complaints about a particular business allows Defendants to advance their intricate and deceptive extortion scheme. The contrived numerosity of the complaints gives them the appearance of legitimacy, and these multiple complaints are picked up by Internet search engines, resulting in higher placement of the false and defamatory material on Internet search engines. Consequently, the defamatory material would be viewed by greater

numbers of business customers and potential customers. Ultimately, the targeted business itself learns about the false and defamatory reports as a result of decreased sales or concerns expressed by existing or potential customers regarding the Internet postings. This planned, intentional defamation of the business is done to damage the targeted company in order to draw it into Defendants' extortion scheme.

34.     Upon information and belief, the Rip-off Website purports to allow targeted companies to submit rebuttals, but Defendants post them according to editorial guidelines that are more stringent than those applied to consumer complaints. Among other things, rebuttals are not posted free of charge. In the absence of any rebuttal to the reports on the Rip-off Website, the reports are viewed as the truth by the consuming public.

35.     Confronted with the negative, false, deceptive, misleading and/or defamatory information published on the Rip-off Website, targeted businesses turn to the Defendants for relief from the bad publicity. When ultimately a business contacts Defendants about the defamatory character of the published reports or to request their removal from the Rip-off Website, Defendants carry their prey to the next level of their scheme where they have concocted a "service," available for a significant sum of money, which they offer to such businesses. In return for such payment, Defendants agree to author and publish positive editorials in response to the negative, false, deceptive and misleading reports previously published on the Rip-off Website. Only upon payment for this "protection" service, do Defendants attempt to verify the reports they have previously published in order to "expose those posted erroneously."

36.     Defendants attempt to legitimize this "protection service" by marketing it under the rubric of their "Corporate Advocacy Business Remediation and Consumer Satisfaction Program" (hereinafter referred to as "CAPS" using the same term used on the Rip-off Website),

37.     Once a business buys into their CAPS program, Defendants purportedly undertake to verify the published complaints. Defendants claim that complaints which they verify are then resolved using part of the money paid for "joining" the CAPS program. These complaints are resolved for a concocted and arbitrary monetary value plus a premium ostensibly to compensate the complaining consumer for their inconvenience. Many of the complaints on the Rip-off Website do not purport to come from individuals who have actually lost money from dealing with a targeted business but rather are posted by individuals who simply have declined to purchase the product or service offered by the targeted business. Thus, many of the complaints which Defendants purport to resolve have no quantifiable damage whatsoever. As a result, the amount paid by the business to the Defendants to participate in the CAPS program, in part for resolution of these claims, results in a further illegal windfall to Defendants.

38.     Once Defendants have completed the purported verification process and paid the determined monetary amounts to resolve the so-called "verified" complaints, the targeted business is then required to pay another exorbitant sum to Defendants before they will note on the Rip-off Website that the business has accepted its responsibility and resolved the consumers' complaints that appear on the website.

39.     Prior to filing this suit, Plaintiff became a victim of the Defendants' extortion scheme when materially false, deceptive and defamatory reports regarding the Plaintiff were posted on the Rip-off Website and links to such pages began to appear in search engines.

40.    An Internet search for "Cambridge Who's Who" using the Google search engine on November 12, 2006, as an example, identified the following as the sixth (6th) reference on Google's reply:

> Rip Off Report:Manchester Whos Who, Cambridge Whos Who, Manchester ...
> People should know that Manchester/**Cambridge who's who** prey on those who do not have the means to defend themselves. They sell memberships to a book that ...
> www.ripoffreport.com/reports/ripoff203539.htm - 33k - Cached - Similar pages [sic]

A copy of the Google search report is attached as Exhibit A. The content of this and other search engine "hits" originate from the Rip-off Website. Descriptions appearing on search engine hits, such as the one quoted above, contain negative, false, deceptive, misleading and defamatory information.

41.    Following the Google link referenced above takes the user to a page on the Rip-off Website (the Uniform Resource Locator or "URL" for this page is "www.ripoffreport.com/reports/ripoff203539.htm") where the following appears in large bold typeface:

> Manchester Whos Who, Cambridge Whos Who, Manchester Publishing deceptive and predatory business practice, mis-representation, no customer service Internet *Consumer Suggestion ..Manchester/Cambridge Who's Who [sic]

The title appearing at the top of the web browser for that page, which is generated by the unseen HTML source code added by Defendants, likewise reads "Rip Off Report: Manchester Whos Who, Cambridge Whos Who, Manchester Publishing deceptive and predatory business practice, mis-representation, no customer service Internet" [sic]. A copy of the page referenced by this URL is attached as Exhibit B.

42.   On that page ("www.ripoffreport.com/reports/ripoff203539.htm"), a posting by an

anonymous person claims that:

(a)   They were aggressive in signing me up and even more aggressive trying not to give me a refund.

(b)   In summary the rotten core of the apple here is the deceptive and predatory business practice as the company skirts the line of legality, pulls you in with a slick sales presentation and website . . .

(c)   The term con artist was coined in that it is an art to deceive others. I think it applies here.

A second purported "rebuttal" posting claims:

(a)   I am sorry to see you were ripped off.

(b)   I am an ex-employee who was fired after I spoke up about unjust practices.

(c)   People should know that Manchester/Cambridge who's who prey on those who do not have the means to defend themselves.

(d)   I think people who have been ripped off should write . . . to the better business bureau.

(e)   Additionally, the organization will continue to change it's [sic] name to avoid being prosecuted.

43.   In addition to search engines directing consumers to specific pages within the

Rip-off Website, consumers who have been referred to the Rip-off Website can search for the

company by name and find further postings. A search utilizing the Rip-off Website search field

on November 12, 2006, found the following reports described:

(a)   Cambridge Who's Who high pressure, deceitful mail, no response after purchase Ripoff Internet.

(b)   Cambridge Who's Who - Manchester Who's Who - Empire Who's Who ripoff This company sends out an invitation to be listed in their who's who directory and make it sound like it is an honor to be selected. Then they lie

to you and steal your money Internet *Consumer Suggestion ..Who's not Who.

(c)    Cambridge Who's Who ripoff, dishonest, fraudulent billing, rude customer service Uniondale New York.

(d)    Cambridge Who's Who - Manchester Who's Who SCAM RIPOFF FRAUD SPAM Uniondale New York.

(e)    Manchester Whos Who, Cambridge Whos Who, Manchester Publishing deceptive and predatory business practice, mis-representation, no customer service Internet *Consumer Suggestion ..Manchester/Cambridge Who's Who.

A copy of the foregoing page is attached as Exhibit C. Each of these headings is a hyperlink which allows visitors to point and click to be taken to the full text of the purported posting. Copies of the referenced pages are attached as Exhibits D through H. Both the foregoing descriptions and the web pages which are linked to them are materially false, deceptive and defamatory.

44.    Defendants, in reality, have created a concerted, well planned scheme which uses a purported Internet dialogue among unsuspecting, disgruntled consumers to trap business entities into their scheme of extorting exorbitant sums of money in return for favorable revision of unverified consumer complaints reported on the Rip-off Website or in return for becoming listed on the Rip-off Website as a participant in the CAPS program. Thus, rather than Defendants selecting their targets for their extortion scheme, they rely upon unhappy consumers to post their "rip-off reports" on the Rip-off Website, thereby creating a negative image for the now targeted businesses. These reports are further negatively enhanced by Defendants' editing. As the affects of the negative publicity multiply and widen, an individual business, like the Plaintiff's, is forced to act to mitigate or eliminate the negative publicity. At that point the

business is set in the trap of Defendants' extortion scheme. The negative business image and Internet market pressures force businesses to submit to Defendants' extortion scheme.

45.     Although striving to achieve the appearance of a legitimate public interest/consumer advocacy group, the Rip-off Website is a method by which Defendants seek commercial and economic gain.

46.     Extolling its role as a purported consumer advocate, Defendants use the Rip-off Website to solicit donations from visitors to the site including, but not limited to, residents of New York. Upon information and belief these "donations" are income producing sources for Defendants and are not used in furtherance of consumer advocacy as represented on the Rip-off Website.

47.     Upon information and belief, Defendants sell advertising space on the Rip-off Website and solicit advertisers within the state of New York.

48.     In addition to receiving and publishing these purported consumer reports, visitors to the Rip-off Website are encouraged to purchase Defendants' "Rip-Off Revenge Guidebook" and can follow a link to another website operated by Defendants, "www.ripoffrevenge.com," where they may purchase a copy using a credit or debit card through a PayPal account.

49.     Despite Plaintiff's excellent reputation for its products and services, nationwide success and high satisfaction on the part of its members totaling in excess of 200,000, Plaintiff has become a target of Defendants' extortion scheme by reason of Defendants' publication of the negative, false, deceptive, misleading and defamatory statements on the Rip-off Website.

50.     Defendants have published and made available for viewing worldwide more than a dozen false and defamatory reports about Plaintiff, the content of which the Defendants

themselves largely created, in whole or in part, with reckless disregard for the truth of such stories.

51.     As consumers search for Plaintiff's products and services on the Internet, they initially see the negative, false, deceptive, misleading and defamatory information contained in search engine "hits." Many potential customers abandon their interest in Plaintiff's products and services based solely on their review of the descriptions, crafted by Defendants, which are contained in the search engine "hits" (*e.g.,* the search engine "hit" quoted in Paragraph 40 above).

52.     When consumers are directed to Defendants' Rip-off Website as a result of their inquiries through search engines, they are subjected to additional false and defamatory articles published about Plaintiff by Defendants.

53.     Defendants are using the false and defamatory material about Plaintiff for the purpose, among other things, of diverting "hits" and attention of Internet users initially searching for Plaintiff's goods and services away from Plaintiff's website and directing them to Defendants' website.

54.     Defendants' diversion of "hits," and their publication of false and defamatory reports about Plaintiff, with reckless disregard for the truth of such reports, has caused numerous consumers to mistakenly believe that Plaintiff engages in false and deceptive business practices.

55.     Such diversion has resulted in, and continues to result in, substantial and irreparable harm to Plaintiff.

56.     As a direct, proximate and intended result of the foregoing wrongful and malicious acts, Plaintiff has been damaged in its good name and reputation, has suffered great loss of its goodwill, has suffered diminution in its value as a business entity, has lost business

with current as well as potential future customers, and it continues to suffer increasing damages on a daily basis.

57.   Plaintiff has no adequate remedy at law.

## CAUSES OF ACTION

### COUNT I

### EXTORTION

58.   The allegations contained in Paragraphs 1 through 57, and all subsequent allegations in this Complaint, are adopted and incorporated by reference as if set forth fully in this paragraph.

59.   Defendants, with the intent to extort from the Plaintiff, have demanded money and threatened to continue to disparage the reputation of the Plaintiff online and offline, threatened to continue to perpetrate criminal acts aimed at the Plaintiff, and threatened to continue to attack the business of the Plaintiff through a campaign of conduct improperly interfering with Plaintiff's business unless such payments were made. These acts include, but are not limited to, the inclusion of Plaintiff and its business as a target of Defendants' false, deceptive, malicious and defamatory reports on Defendants' Website in an attempt to force Plaintiff to pay for participation in the Defendants' extortion scheme which it attempts to legitimize through its sham, fictitious CAPS program.

60.   Defendants' demands of Plaintiff are unreasonable and illegal, and Plaintiff refuses to acquiesce in Defendants' demands.

61.   Such conduct is reckless, intentional, malicious, and wanton, and represents a conscious and total disregard for the rights of the Plaintiff, and has caused and continues to cause damage to the Plaintiff.

62.     As a direct, proximate and intended result of the foregoing wrongful and malicious acts, Plaintiff has been damaged in its good name and reputation, has suffered great loss of its goodwill, has suffered diminution in its value as a business entity, has lost business with current as well as potential future customers, and it continues to suffer increasing damages on a daily basis.

**COUNT II**

**VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §§ 1961, *et seq*.**

63.     The allegations contained in Paragraphs 1 through 62, and all subsequent allegations in this Complaint, are adopted and incorporated by reference as if set forth fully in this paragraph.

64.     Defendants have violated the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq*. (hereinafter the "RICO Act"), as more fully stated below.

65.     Xcentric is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

66.     Magedson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

67.     Magedson was and is associated with Xcentric and has control over this enterprise such that he can and did conduct and participate in the operation of Xcentric.

68.     Magedson, through a pattern of criminal activity, acquired and maintained, directly and indirectly, his interests in and control of the enterprises Xcentric Ventures, LLC, Rip-Off Report, Ripoffreport.Com, Bad Business Bureau, and/or Badbusinessbureau.com.

Page 16 of 23

69.    Magedson, is employed by, and associated with, Xcentric Ventures, LLC, Rip-Off Report, Ripoffreport.Com, Bad Business Bureau, and/or Badbusinessbureau.com., all of which are enterprises involved in the conduct of and participation in, both directly and indirectly, a pattern of criminal activity.

70.    Magedson has conspired together with other persons and entities whose names are not presently known to the Plaintiff, and endeavored to participate in, conduct, and derive economic benefit and proceeds from, their criminal activity through the interests acquired in, and control of, Xcentric Ventures, LLC, Rip-Off Report, Ripoffreport.Com, Bad Business Bureau, and/or Badbusinessbureau.com.

71.    Defendants and other persons and entities whose names are not presently known to the Plaintiff have committed extortion, or attempted to commit extortion of the property of the Plaintiff, fraud, and other conduct that is subject to indictment or information as criminal offenses under 18 U.S.C. § 1951, which are among the predicate offenses listed in the federal RICO Act, 18 U.S.C. § 1961.

72.    Defendants and other persons and entities whose names are not presently known to the Plaintiff have committed wire fraud and other conduct that is subject to indictment or information as a criminal offense under 18 U.S.C. §1343, which is among the predicate offenses listed in the federal RICO Act, 18 U.S.C. § 1961.

73.    Defendant Xcentric Ventures, LLC, Rip-Off Report, Ripoffreport.Com, Bad Business Bureau, and/or Badbusinessbureau.com are criminal enterprises through which Magedson has operated and through which he has violated the foregoing criminal statutes.

74.    Defendants have acted intentionally, recklessly, fraudulently, maliciously, and willfully.

75.   Defendants' actions are prohibited under the provisions of the federal RICO Act, 18 U.S.C. § 1962.

76.   As a direct, proximate and intended result of the foregoing wrongful and malicious acts, Plaintiff has been damaged in its good name and reputation, has suffered great loss of its goodwill, has suffered diminution in its value as a business entity, has lost business with current as well as potential future customers, and it continues to suffer increasing damages on a daily basis.

77.   Under the provisions of the RICO Act's civil remedies, Plaintiff is entitled to injunctive relief under 18 U.S.C. § 1964(a) and to recover damages, treble damages, attorneys fees and costs under 18 U.S.C. § 1964(c).

## COUNT III

### DEFAMATION

78.   The allegations contained in Paragraphs 1 through 77, and all subsequent allegations in this Complaint, are adopted and incorporated by reference as if set forth fully in this paragraph.

79.   Defendants' wrongful, intentional and malicious actions set forth herein constitute defamation of Plaintiff's good name and reputation.

80.   As a direct, proximate and intended result of the foregoing wrongful and malicious acts, Plaintiff has been damaged in its good name and reputation, has suffered great loss of its goodwill, has suffered diminution in its value as a business entity, has lost business with current as well as potential future customers, and it continues to suffer increasing damages on a daily basis.

## COUNT IV

## TRADEMARK INFRINGEMENT

81.    The allegations contained in Paragraphs 1 through 80, and all subsequent allegations in this Complaint, are adopted and incorporated by reference as if set forth fully in this paragraph.

82.    Since at least July 2006, Plaintiff has used the name "Cambridge Who's Who" in the ordinary course of trade and commerce to identify and distinguish its registry of individuals from "Who's Who" publications compiled and produced by other companies. This mark has become distinctive of the Plaintiff's goods and services and is not merely descriptive. This mark has become inherently identifiable with Plaintiff's goods and services and has acquired a secondary meaning in the marketplace.

83.    In July 2006, a merger between Empire Who's Who and Manchester Who's Who resulted in the creation of Cambridge Who's Who Publishing, Inc.  Prior to that time, its predecessor corporations used the names "Empire Who's Who" and "Manchester Who's Who" to identify and distinguish their respective registries of individuals from other such publications. Plaintiff is the owner of these marks, these marks are in use and no other person has registered these marks, either federally or in this state, or has the right to use these marks either in the identical form or in such near resemblance as to be likely, when applied to the goods or services of such other person, to cause confusion, or to cause mistake, or to deceive.

84.    By reason of the foregoing, Plaintiff has acquired trademarks and trade names in "Cambridge Who's Who," "Empire Who's Who," and "Manchester Who's Who."

85.    Defendants have used and included, and continue to use and include, the foregoing trademarks and trade names in the captions of the pages, page titles, and metatags

which are part of the Rip-off Website.  See Exhibits D-1 through H-1, which are the first pages

of the hidden HTML source code for Exhibits D through H, respectively.

86.    Such use of Plaintiff's trademarks and trade names by Defendants in the manner

described herein creates a likelihood of injury to Plaintiff's business reputation and/or dilution of

the distinctive quality of its trademarks and trade names.

87.    By reason of the foregoing, Defendants have infringed upon Plaintiff's

trademarks and trade names.

88.    Defendants' wrongful actions as set forth herein entitle Plaintiff to injunctive

relief under the provisions of N.Y. Gen. Bus. Law § 360-l.

## COUNT V

### TORTIOUS INTERFERENCE WITH CONTRACT

89.    The allegations contained in Paragraphs 1 through 88, and all subsequent

allegations in this Complaint, are adopted and incorporated by reference as if set forth fully in

this paragraph.

90.    Defendants were aware of the existence of the many contracts between Plaintiff

and its over 200,000 customers who were listed in the Plaintiff's registry.

91.    The Defendants intentionally and unjustifiably attempted to, and did, induce

customers to end their relationships with Plaintiff as a result of the Defendants' misconduct.  In

some instances, contracts were terminated by a breach of contract, such breach resulting from the

Defendants' wrongful conduct as alleged herein.

92.    Such conduct was reckless, intentional, malicious, wanton, and represents a

conscious and total disregard for the rights of the Plaintiff, and causes damage to the Plaintiff.

93.    As a direct, proximate and intended result of the foregoing wrongful and malicious acts, Plaintiff has been damaged in its good name and reputation, has suffered great loss of its goodwill, has suffered diminution in its value as a business entity, has lost business with current as well as potential future customers, and it continues to suffer increasing damages on a daily basis.

## COUNT VI

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC GAIN

94.    The allegations contained in Paragraphs 1 through 93, and all subsequent allegations in this Complaint, are adopted and incorporated by reference as if set forth fully in this paragraph.

95.    The Defendants knew that Plaintiff had a reasonable expectation of entering into future business relationships with many additional members nationwide, but intentionally, purposefully and with intent to damage Plaintiff, materially interfered with the prospective contracts by the acts as alleged herein.

96.    As a direct, proximate and intended result of the foregoing wrongful and malicious acts, Plaintiff has been damaged in its good name and reputation, has suffered great loss of its goodwill, has suffered diminution in its value as a business entity, has lost business with current as well as potential future customers, and it continues to suffer increasing damages on a daily basis.

## COUNT VII

### CONSPIRACY TO INJURE IN TRADE, BUSINESS AND REPUTATION

97.     The allegations contained in Paragraphs 1 through 96, and all subsequent allegations in this Complaint, are adopted and incorporated by reference as if set forth fully in this paragraph.

98.     The Defendants have joined together, in an enterprise, and in concert with each other and with others not presently known to the Plaintiff, in furtherance of an agreement to damage the Plaintiff in its trade, business and reputation through the wrongful, intentional and unlawful acts complained of herein.

99.     As a direct, proximate and intended result of the foregoing wrongful and malicious acts, Plaintiff has been damaged in its good name and reputation, has suffered great loss of its goodwill, has suffered diminution in its value as a business entity, has lost business with current as well as potential future customers, and it continues to suffer increasing damages on a daily basis.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cambridge Who's Who Publishing, Inc., prays that this Court grant judgment awarding it the following relief:

a)      an award of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00);

b)      an award of exemplary and punitive damages;

c)      an award of its attorneys' fees and court costs expended;

d)      temporary and permanent injunctive relief to stop the Defendants' misconduct; and

e)      such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Cambridge Who's Who Publishing, Inc., hereby demands trial by jury.

**CAMBRIDGE WHO'S WHO PUBLISHING, INC.**

By: _Donald E. Morris_

Donald E. Morris, Esq. (DM-9138)

John W. Dozier, Jr., Esq. (JD-3389)
  *Pro Hac Vice* (Application Pending)
Donald E. Morris, Esq. (DM-9138)
Michael E. Ornoff, Esq. (MO-3335)
  *Pro Hac Vice* (Application Pending)
**DOZIER INTERNET LAW, P.C.**
301 Concourse Blvd.
West Shore III, Suite 300
Glen Allen, VA 23059
Phone (804) 346-9770
Fax (804) 346-0800
Email: jwd@cybertriallawyer.com
Email: don@cybertriallawyer.com
Email: mike@cybertriallawyer.com