**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

CAMBRIDGE WHO'S WHO PUBLISHING, INC.,
     a New York corporation,

           Plaintiff,

v.

XCENTRIC VENTURES, LLC., an Arizona limited

liability company, d/b/a/ RIP-OFF REPORT,

and/or RIPOFFREPORT.COM, and/or BAD
BUSINESS BUREAU, and/or
BADBUSINESSBUREAU.COM

and

EDWARD MAGEDSON, a/k/a Ed Magedson,
     an individual,

           Defendants.

----------------------------------------------------------------x

                        **DEFENDANT XCENTRIC**
                        **VENTURES, LLC'S**
                        **MOTION TO DISMISS**
                        **FOR LACK OF**
                        **JURISDICTION**

                        Case No.: 2:06-cv-06590-
                            JS-ETB

     Defendant Xcentric Ventures, LLC (hereinafter "Xcentric" or "Defendant")

respectfully requesst that this Court dismiss the above-captioned action pursuant to

Fed.R.Civ.P. 12(b)(2) because this Court does not have personal jurisdiction over the

Defendant.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

     Defendant Xcentric is an Arizona-based LLC which operates a website

located at **www.RipoffReport.com** and **www.BadBusinessBureau.com** (the "ROR

Site" or "Rip-Off Report").  Xcentric does not own any assets in New York, does not

have any offices in New York, does not have any agents in New York and does not

conduct any business in New York.  Xcentric does business in Phoenix, Arizona, and

Dockets.Justia.com

its agents, and assets are all located in Phoenix, Arizona. (Declaration of Ed Magedson, attached as Exhibit "A").

Cambridge claims that Xcentric committed a tort in New York. However, in considering whether there is jurisdiction over Defendant, this Court is not permitted to treat Defendants as publishers of content that they did not create. The Court must avail itself of the Communications Decency Act, 47 U.S.C. § 230 (the "CDA"). At their core, Cambridge's claims are founded upon a single premise—that Defendant is legally responsible for messages which third parties have posted on the ROR Site. This premise is wrong as a matter of law because pursuant to the CDA, websites such as those operated by Defendant is <u>not</u> and <u>cannot</u> be held liable for information posted online by third parties. Although Plaintiff could have chosen to pursue the *actual individuals* who wrote/created the offending materials, Plaintiff cannot impute liability to Defendants for messages that Defendants did not author.

It is well-established that under certain circumstances, those who " publish" or "distribute" defamatory statements via traditional methods (i.e., a newspaper or magazine) can be liable for false statements authored by a third party:

> At common law, "primary publishers," such as book, newspaper, or magazine publishers, are liable for defamation on the same basis as authors. Book sellers, news vendors, or other "distributors," however, may only be held liable if they knew or had reason to know of a publication's defamatory content.

*Barrett v. Rosenthal*, --- Cal.Rptr.3d ----, 2006 WL 3346218, *4 (Cal. Nov. 20, 2006) (citing *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997); Prosser & Keeton, The Law of Torts (5th ed.1984) § 113, pp. 810-811; Rest.2d

2

Torts, § 581, subd. (1), & coms. c, d, & e, pp. 232-234; *Osmond v. EWAP, Inc.* 153 Cal.App.3d 842, 852-854 (1984)).

For many years, this rule made sense because the publisher of traditional media sources can always review content <u>before</u> publication—in other words, virtually every word in a newspaper has been or could be reviewed by the publisher before printing. For that reason, courts allowed defamation plaintiffs to sue a publisher even if the content at issue was written by a third party.

The Internet has presented a new paradigm wherein people can publish statements by the millions on public message boards virtually instantly, at any time of the day or night, without any opportunity for review by the site operator. Allowing traditional publisher or distributor based liability against website operators in this context would thus provide an immense incentive for such websites to prohibit any publication of messages by third parties, thereby reducing the amount of free speech available online.

For that reason, in 1996 Congress enacted the Communications Decency Act, 47 U.S.C. § 230, which prohibits all civil actions that treat an interactive computer service as the "publisher or speaker" of messages transmitted over its service by third parties. This federal statute, which was passed by Congress with the intent to "promote unfettered speech," provides in relevant part that:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

3

47 U.S.C. § 230(c)(1). Section 230 further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Green v. America Online,* 318 F.3d 465, 470 (3rd Cir. 2003) (noting that the CDA, "'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions - such as deciding whether to publish, withdraw, postpone, or alter content.'").

An outstanding explanation of this law and its history is set forth in the California Supreme Court's recent opinion in *Barrett v. Rosenthal*, --- Cal.Rptr.3d ----, 2006 WL 3346218 (Cal. Nov. 20, 2006), cited above. In fact, as the *Barrett* Court recognized, the CDA has been universally interpreted as providing <u>immunity</u> to interactive websites for content created by a third party. *See Barrett*, 2006 WL 3346218, *18 note 18; (citing *Blumenthal v. Drudge*, 992 F.Supp. 44, 51 (D.D.C. 1998); *Ben Ezra, Weinstein, and Co., Inc. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *Morrison v. America Online, Inc.*, 153 F.Supp.2d 930, 933-934 (N.D.Ind. 2001); *PatentWizard, Inc. v. Kinko's, Inc.* 163 F.Supp.2d 1069, 1071 (D.S.D. 2001); *Green v. America Online*, 318 F.3d 465, 470-471 (3rd Cir. 2003); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-1124 (9th Cir. 2003); *Doe One v. Oliver*, 755 A.2d 1000, 1003-1004 (Conn.Super.Ct. 2000); *Doe v. America Online, Inc.*, 783 So.2d 1010, 1013-1017 (Fla. 2001); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 40-42 (Wn.App. 2001); *Barrett v. Fonorow* 799 N.E.2d 916, 923-

4

925 (Ill.App.Ct. 2003); *Donato v. Moldow* 865 A.2d 711, 720-727 (N.J. Super.Ct.App.Div. 2005); *Austin v. CrystalTech Web Hosting*, 125 P.3d 389, 392-394 (Ariz.App. 2005)).

> Secondary authority has also explained that:

> > [The CDA's] provisions set up a complete shield from a defamation suit for an online service provider, <u>absent an affirmative showing that the service was the actual author of the defamatory content</u>. Accordingly, a number of courts have ruled that the ISP was immune from liability for defamation where allegedly libelous statements were made available by third parties through an ISP or were posted by third parties on the server's billboards, as the ISP fell within the scope of 47 U.S.C.A. § 230.

Jay M. Zitter, J.D., Annotation—*Liability of Internet Service Provider for Internet or E–mail Defamation* § 2, 84 A.L.R.5th 169 (2000) (emphasis added) (citing Pantazis, Note, *Zeran v America Online, Inc.: Insulating Internet Service Providers From Defamation Liability*, 34 Wake Forest L. Rev. 531 (1999)); *see also Batzel v. Smith*, 333 F.3d 1018, 1027–28 (9th Cir. 2003) (recognizing, "Making interactive computer services and their users liable for the speech of third parties would severely restrict the information available on the Internet. Section 230 therefore sought to prevent lawsuits from shutting down websites and other services on the Internet.") (quoting *Ben Ezra, Weinstein, & Co. v. America Online Inc.*, 206 F.3d 980, 983–84 (10th Cir. 2000).

Although the Complaint names both Xcentric and Ed Magedson as defendants, only Xcentric has been served with process, and thus, only Xcentric is appearing in this case.

## II.  **THIS MATTER SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

When faced with a challenge to the court's ability to hear a cause, the ultimate burden is upon the party asserting jurisdiction. *Roldan v. Dexter Folder Company*, 178 A.D.2d 589, 590, 577 N.Y.S.2d 483 (2nd Dept.1991); *Spectra Products, Inc. v. Indian River Citrus Specialties, Inc.*, 144 A.D.2d 832, 833, 534 N.Y.S.2d 570 (3rd Dept.1988); *Basquiat v. Kemper Snowboards*, 1997 WL 527891 at *1 (S.D.N.Y.1997). Upon motion, a court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction. *See* Fed.R.Civ.P. 12(b)(2); *see also In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Siemens Austria),* 230 F.Supp.2d 403, 406 (S.D.N.Y.2002).

Xcentric is an Arizona-based LLC and Magedson is a resident of Arizona. Other than merely operating the ROR Site (free of charge to users) which can be viewed in New York, Defendants have no contacts with this forum. This is insufficient to establish personal jurisdiction because United States courts are virtually unanimous in holding that the mere operation of a website in location "A" which is viewable in location "B" does not confer jurisdiction in location "B". *See*, e.g., *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (noting, "as far as we are aware, no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state.") (emphasis added) (internal citation omitted).

6

In addition, as explained in Exhibit "A", every time a user submits a report to Rip-Off Report for publication, the user is required to agree that the State of Arizona shall have exclusive jurisdiction over any dispute arising from the report. It is well-accepted policy that forum-selection clauses are prima facie valid. *Silvestre v. De Loaiza*, 12 Misc.3d 492, 498, 820 N.Y.S.2d 440, 444 (N.Y.Sup.,2006).

### A.    There Is No Basis For Long-Arm Jurisdiction.

In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). New York's "Long-Arm" statute, CPLR 302(a), provides, as here relevant, as follows: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ...(1) Transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act…" *Id*.

### 1.    Defendant Does No Business In New York.

Pursuant to CPLR § 301, the Court may exercise jurisdiction over a party if it is "doing business" in New York State. A defendant is "doing business" in New York if it has engaged in such continuous and systematic course of activities in New York such that it can be deemed present in New York. *Frummer v. Hilton Hotels Int'l, Inc*., 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967). The test for "doing business 'is a simple [and] pragmatic one,' which varies in its application

7

depending on the particular facts of each case. The court must be able to say from the facts that the corporation is present 'in the State not occasionally or casually, but with a fair measure of permanence and continuity'" *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33-34, 563 N.Y.S.2d 739, 565 N.E.2d 488 (1990) (citations omitted). Although simple and pragmatic, "[t]he doing business standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction may be sued in New York on causes of action wholly unrelated to acts done in New York." *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F.Supp.2d 722, 731 (S.D.N.Y.2001) (internal quotation marks omitted).

In addition to the traditional indicia of "doing business" in New York, such as the existence of an office, bank account or other property in New York, jurisdiction over a foreign corporation exist where it solicits business in New York and engages in some other continuous activity. *Allojet PLC v. Vantage Assoc.*, 2005 WL 612848 (S.D.N.Y.2005)(once substantial solicitation is shown, "very little more is necessary to a conclusion of doing business"). Solicitation in the jurisdictional context does not necessarily require solicitation in the sense of an offer of contract. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir.2000). Rather, the central question is whether the defendant behaved in such a way as to encourage others to spend money, or otherwise act, in a manner that would benefit defendant. *Id.* "A firm does not 'do[ ] business' in New York simply because New York citizens can contact the firm via the worldwide web." *Smith v. Circus-Circus Casinos, Inc.*, 304 F.Supp.2d

8

463, 465 (W.D.N.Y.,2003) (quoting *Cornell v. Assicurazioni Generali, S.p.A.*, No. 97 CV 2262, 2000 WL 284222, \*2 (S.D.N.Y. Mar. 16, 2000)).

       2.   <u>Defendant Has Not Committed A Tort In New York</u>.

First, the long arm statute specifically state that defamation by an out of state resident is not activity that can support long arm jurisdiction.  CPLR 302(a).

In addition, none of the claims here can support long arm jurisdiction as to someone who did not physically enter the state.  "It has . . . long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there . . ." *Fantis Foods v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 402 N.E.2d 122 [citations omitted].  In this case, the injuries allegedly sustained by Plaintiff did <u>not</u> occur directly in New York and therefore personal jurisdiction based on New York's long-arm statute cannot be sustained.

In *Feathers v. McLucas*, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), the Court held that the language "commits a tortious act within the state," as contained in sub-paragraph (a)(2), is "plain and precise" and confers personal jurisdiction over non-residents " when they commit acts within the state."  *Id*. at 460, 261 N.Y.S.2d 8, 209 N.E.2d 68 (internal quotation marks omitted).  *Feathers* adopted the view that CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful

act.  The official Practice Commentary to CPLR § 302 explains that "if a New Jersey domiciliary were to lob a bazooka shell across the Hudson River at Grant's tomb, Feathers would appear to bar the New York courts from asserting personal jurisdiction over the New Jersey domiciliary in an action by an injured New York plaintiff."  C302:17. The comment goes on to conclude that:

> As construed by the *Feathers* decision, jurisdiction cannot be asserted over a nonresident under this provision unless the nonresident commits an act in this state. This is tantamount to a requirement that the defendant or his agent be physically present in New York.... In short, the failure to perform a duty in New York is not a tortious act in this state, under the cases, unless the defendant or his agent enters the state.

As recently as 1996, a district court judge in New York flatly stated:  "To subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State."  *Carlson v. Cuevas*, 932 F.Supp. 76, 80 (S.D.N.Y.1996)(Baer, J.).

In a case with a highly similar fact pattern, the Second Circuit determined that no personal jurisdiction attached to an out-of-state web site designer.

> The acts giving rise to Bensusan's lawsuit - including the authorization and creation of King's web site, the use of the words "Blue Note" and the Blue Note logo on the site, and the creation of a hyperlink to Bensusan's web site - were performed by persons physically present in Missouri and not in New York. Even if Bensusan suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2).

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (C.A.2 (N.Y.),1997).  Similarly, the acts Defendant has been accused of, if they did indeed occur at all, were

performed by persons physically present in Arizona and not in New York.  As such, the long-arm statute does not apply.

As explained above, the CDA provides immunity to a website *provided* the website did not actually author the defamatory comment.  Here, Defendant did not author any of the defamatory content concerning Cambridge, and thus are entitled to full and complete CDA immunity.  Since Defendant is subject to CDA immunity, it cannot be alleged that it committed any tort in New York and therefore long-arm jurisdiction cannot apply.

### B.  **Due Process Prevents This Court From Exercising Jurisdiction Over Defendant**.

If the exercise of jurisdiction is found to be appropriate under the New York long-arm statute, the court then must decide whether such exercise comports with the requisites of due process.  *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996).  Defendant denies that jurisdiction is appropriate under the New York long-arm statute; however, even if this Court determines that jurisdiction is appropriate under the long-arm statute, due process still prevents this Court from exercising jurisdiction over Defendant.

The Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution limit a state's power to render a valid personal judgment against a nonresident defendant.  See generally *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).  This restriction

11

exists because the Due Process Clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). For this reason, "[f]oreign defendants have a liberty interest, protected by the due process clause, 'in not being subject to the binding judgments of a forum with which [they have] established no meaningful 'contacts, ties, or relations.'" *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82 (1985). In essence, the Due Process Clause ensures that persons will have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Id.*

The Supreme Court has explicitly declared that "The foreseeability that is critical to due process analysis is not the mere likelihood that the product will find its way into the foreign State. Rather it is that the defendant's conduct in connection with the foreign State are such that he should reasonably anticipate being haled into court there." (*See World-Wide Volkswagen Corp*., supra, 444 U.S. at 297). The foreseeability requirement is itself restricted by the purposeful affiliation requirement. *See Darienzo v. Wise Shoe Stores*, 74 A.D.2d 342, 346, 427 N.Y.S.2d 831. There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the foreign state, thus invoking the benefits and protection of its laws". S*ee Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283. Due process requires a showing that the defendant also

have some "purposeful affiliation" with the foreign state. S*ee, Martinez v. American Standard*, 91 A.D.2d 652, 457 N.Y.S.2d 97.

The required due process analysis involves an inquiry into (1) whether a defendant has "minimum contacts" with the forum state and (2) whether the assertion of personal jurisdiction in these circumstances is consistent with "traditional notions of fair play and substantial justice ...." *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1027 (2d Cir.1997) (internal quotations omitted). "The test, though not 'precise' is a 'simple pragmatic one' [citations omitted]: [it's] the aggregate of the corporation's activities in the State such that it may be said to be 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity.' " *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982), quoting, *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917); *see also, American Dental Co-op. v. Attorney General of State of N.Y.*, 127 A.D.2d 274, 280, 514 N.Y.S.2d 228 (1st Dept. 1987).

Due Process mandates dismissal under the circumstances present in this case. To begin, none of the Defendants' business activities have any direct or purposeful connection to New York. Rather, the ROR Site has nearly 250,000 reports pertaining to a multitude of different jurisdictions. Exhibit "B."

1.    General Jurisdiction Is Lacking.

General jurisdiction requires Defendants to have "continuous and systematic general business contacts" with the forum state [here, Texas]. *Helicopteros*

13

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

A defendant's contacts with the forum "must be so extensive to be tantamount" to the defendant's "being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in a [New York] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). "[I]t is well established that New York's long arm requirement of doing business is more restrictive than the requirement of minimum contacts." *Excelsior College v. Frye*, 306 F.Supp.2d 226, 230 (N.D.N.Y.,2004); *see Purdue Pharma L.P. v. Impax Labs., Inc.*, No. 02 Civ. 2803(SHS), 2003 WL 22070549, at * 4 (S.D.N.Y. Sept. 4, 2003); *Andrulonis v. United States*, 526 F.Supp. 183, 189 (N.D.N.Y.1981).

As recognized by Magistrate Peck in *Hearst Corp. v. Goldberger*, n.o.r., 1997 WL 97097, *1 (S.D.N.Y.1997), "a finding of personal jurisdiction in New York based on an Internet web site would mean that there would be nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet web site. Such nationwide jurisdiction is not consistent with traditional personal jurisdiction case law nor acceptable to the Court as a matter of policy" *People by Vacco v. Lipsitz*, 174 Misc.2d 571, 578, 663 N.Y.S.2d 468, 473 (N.Y.Sup.,1997); *see also, in accord, Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996, Stein, J.]).

14

It is undisputed that the Defendant does not have a New York office or any property in New York.  Further, it is undisputed that the Defendant does not have New York bank accounts or employees in New York. Nor does the Defendant have a mailing address, telephone line, or post office box within the state.  In addition, the Defendant does not pay New York income or property taxes.

Although the Plaintiff further alleges that the Defendant maintains a website accessible by New York residents and to solicit New York residents, it is well-established that solicitation of business alone will not justify a finding of corporate presence in New York.  *C.B.C. Wood Products, Inc. v. LMD Integrated Logistics Services, Inc*., 455 F.Supp.2d 218, 223 (E.D.N.Y.,2006); see *Fashion Fragrance & Cosmetics v. Croddick*, No. 02 Civ. 6294, 2003 WL 342273, *5, 2003 U.S. Dist. LEXIS 2220, at *9 (S.D.N.Y. Feb.11, 2003). Moreover, inviting people to express themselves in an on-line forum, without any fees, is not the solicitation of business, it is the encouragement of free speech under the First Amendment.

Plaintiff points to reports about New York companies on the ROR Site and to the fact that the ROR Site markets a book.  There are, as of today, 250,020 reports on Rip-off Report, of which 16,900 are about companies that the author identified as a New York company.  In other words, approximately 6.7% of the reports on Rip-off report by consumers are about New York companies.  (Exhibit "B").  Also, Rip-off Report markets two books on the website.  One is a consumer guide and one is a guide to mortgages.  The books are marketed on the website by an affiliated company, Consumer Media Publishing, LLC.  Consumer Media ships the books to

15

consumers throughout the country. Neither of these facts establishes the type of substantial and continuous contacts with the state of New York to rise to the level of general jurisdiction and since the claims in this case do not arise out of book sales, this information is irrelevant to specific jurisdiction.

> 2.    <u>Defendant Is Not Subject To Specific Jurisdiction In New York</u>.

Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum, and those contacts meet the due process standard. *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987). The first and second parts of this analysis require the court to evaluate the relationship among the Defendants, the forum state and the cause of action. *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

The nature and quality of the defendant's activity must be such that "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" *Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 587 (2d Cir.1965). New York courts look to the totality of the circumstances to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy. *See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457 n. 5, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

16

The guiding principle which has emerged from the case law is that whether the exercise of personal jurisdiction is permissible is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 565 (S.D.N.Y.2000) (citing *K.C.P.L., Inc. v. Nash*, No. 98 Civ. 3773, 1998 WL 823657, at *5 (S.D.N.Y.1998) (internal citations omitted)).  In order to determine the existence of personal jurisdiction in internet cases, courts inquire as to whether the "defendant maintains an interactive website which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." *Id.* (citing *Am. Homecare Fed. Inc. v. Paragon Scientific Corp.*, 27 F.Supp.2d 109, 113 (D.Conn.1998); *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)).  The courts have recognized the existence of passive websites which make information available, as well as active websites which allow consumers to exchange information and actually do business through the internet.  *Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, No. 00 Civ.1971, 2000 WL 1290585, **3-4, 2000 U.S. Dist. LEXIS 13138, at *10-11 (S.D.N.Y. Sept. 13, 2000).

Internet websites that are not of a commercial nature and do not permit the purchase of products on-line are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1). *ISI Brands, Inc. v. KCC Intern., Inc.*,  458 F.Supp.2d 81, 86 (E.D.N.Y.,2006) (citing *Rescuecom Corp. v. Hyams*, No 04-CV-93, 2006 U.S. Dist. LEXIS 45282, at *16-17 (N.D.N.Y. July 5, 2006) (the Court determined

17

that the website did not confer personal jurisdiction because it was not of a commercial nature and it did not offer products for sale); *Molozanov v. Quantum Telecomms. Ltd.*, No. 05 Civ. 5270, 2006 WL 367576, *5, n. 11, 2006 U.S. Dist. LEXIS 16788, at *19 n. 11 (S.D.N.Y. Apr. 6, 2006) ("Although in some instances a defendant's contacts with New York via the internet can provide a basis for jurisdiction under CPLR § 302(a)(1) ... this would not hold true here, as this case involves at most the publishing of a statement on a passive website"); *Knight-McConnell v. Cummins*, No. 03 Civ. 5035, 2005 WL 1398590, *3, 2005 U.S. Dist. LEXIS 11577 at *10 (S.D.N.Y. June 13, 2005) (finding no transaction of business in New York based on online postings of statements about a New York resident on an out-of-state website)).

Traditionally, advertising alone is not sufficient presence within a forum to support jurisdiction. *See*, as a typical example from a legion of cases so holding, *Fidelity & Cas. Co. of New York v. Philadelphia Resins Corp.*, 766 F.2d 440, 447 (10th Cir.1985), cert. denied, 474 U.S. 1082, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). Furthermore, "[t]he transmission of communications between an out-of-state defendant and a plaintiff within the jurisdiction does not, by itself, constitute the transaction of business in the forum state." *Bross Utils. Serv. Corp. v. Aboubshait*, 489 F.Supp. 1366, 1371-72 [D.Conn., Cabranes, J.],aff'd mem. 646 F.2d 559 (2nd Cir.1980); *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 [6th Cir.], *cert. denied* 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 [1994]; *Nicholas v. Buchanan*, 806 F.2d 305, 307-08 [1st Cir.1986], *cert. denied* 481 U.S.

18

1071, 107 S.Ct. 2466, 95 L.Ed.2d 875 [1987]; *see also*, Dale M. Cendali & James D. Arbogast, *Net Use Raises Issues of Jurisdiction*, Nat'l L.J., Oct. 28, 1996, p. C7, C9).

Moreover, courts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users. *ISI Brands*, supra. At 87 (citing *Seldon v. Direct Response Techs. Inc*., No. 03 Civ. 5381, 2004 WL 691222, *4, 2004 U.S. Dist. LEXIS 5344, at *15 (S.D.N.Y. Mar. 31, 2004) ("Where a cause of action arises from a posting on an internet website, the fact that the posting appears on the website in every state will not give rise to jurisdiction in every state. To the contrary, jurisdiction will lie only if the posting is intended to target or focus on internet users in the state where the cause of action is filed")).

"While some courts have held that a highly interactive website may give rise to personal jurisdiction where otherwise there would have been none ... in all such cases, unlike here, the plaintiff first established some further contact with the forum state." *Rosenberg v. PK Graphics*, No. 03 Civ. 6655, 2004 WL 1057621, *1, 2004 U.S. Dist. LEXIS 8266, **3-4 (S.D.N.Y. May 10, 2004).

"It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred." *Savage Universal Corp. v. Grazier Constr., Inc*., No. 04 Civ. 1089, 2004 WL 1824102, *9, 2004 U.S. Dist. LEXIS 16088, at *28 (S.D.N.Y. Aug. 13, 2004). In this case, the Plaintiff fails to demonstrate that the Defendant directed its activities to

19

New York.  *Hammer v. Trendl*, No. 02 Civ. 2462, 2003 WL 21466686, *5, 2003

U.S. Dist. LEXIS 623, at *14 (E.D.N.Y. Jan. 18, 2003).

Here, all Defendant did was host a website upon which third parties posted

their opinions and complaints about their experience with Cambridge.  The postings

were free.  Defendant did not engage in any commercial transaction at all.  Its

purpose is to make information available. This case should be analyzed the same as

either a passive web site or a minimally interactive website because the claims arise

out of Defendant's passive activity of merely making information available.  In

addition, even if the court analyzes this case under the test for an interactive web

site, the level of interactivity here is simply that the author posted a complaint on the

website and there was no commercial nature to the exchange of information because

there was no money exchanged.  Rather, the posting was a classic exercise of non-

commercial free speech.

## III.    <u>JURISDICTION IN NEW YORK WOULD BE UNREASONABLE</u>.

In assessing the reasonableness inquiry, five factors must be considered:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the case;
> (3) the plaintiff's interest in obtaining convenient and effective relief;
> (4) the interstate judicial system's interest in obtaining the most
> efficient resolution of the controversy; and (5) the shared interest of the
> states in furthering social substantive policies.

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996).

Defendant would be unduly burdened if required to defend itself in New York.  The

principal of Defendant and all of Defendant's operations are located in Arizona.

Furthermore, Plaintiff holds itself out as a "national and international" corporation

with members all over the world, as opposed to Defendant, who does business <u>solely</u>

in Arizona and on the Internet. New York has no special interest in adjudicating this

case, since no tort alleged occurred physically in New York, as any of the alleged

torts occurred as a result of statements made either through e-mail or posted on the

ROR Site.  As such, allowing for Defendant to be subject to personal jurisdiction in

New York would be unreasonable and unduly burdensome for Defendant.

**IV.    <u>CONCLUSION</u>**

Based on the foregoing, Defendant requests that the Complaint be dismissed

in its entirety for lack of jurisdiction, together with any further relief that this Court

deems just and proper.


DATED this 22nd day of June, 2007.

**JABURG & WILK, P.C.**



<u>/s/Maria Crimi Speth</u>
Maria Crimi Speth
Attorneys for Defendant Xcentric
Ventures, LLC


Maria Crimi Speth, #012574
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
Phone:        (602) 248-1000
Fax:           (602) 248-0522
Email:        mcs@jaburgwilk.com

**Certificate of Service**

I hereby certify that on June 22, 2007, I electronically transmitted the

attached document to the Clerk's Office using the CM/ECF System for filing, and

for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Donald E. Morris
Dozier Internet Law P.C.
301 Concourse Boulevard
West Shore III, Suite 300
Glen Allen, VA  23059

Gary Ettelman
100 Quentin Roosevelt Blvd., Suite 401
Garden City, NY  11530

Attorneys for Plaintiff


/s/Maria Crimi Speth

10297-1/LAR/LAR/594468_v1