UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

CAMBRIDGE WHO'S WHO PUBLISHING, INC.,                 06-CV-06590 (JS) (ETB)

                        Plaintiff,

        -against-

XCENTRIC VENTURES, LLC and
EDWARD MAGEDSON,

                        Defendants.
-------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## AND IN SUPPORT OF ITS CROSS MOTION

Ettelman & Hochheiser, P.C.
100 Quentin Roosevelt Boulevard
Suite 401
Garden City, New York 11530-4850

Dockets.Justia.com

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......................................................................ii, iii

**SUMMARY OF ARGUMENT** ....................................................................1

**STATEMENT OF FACTS** ...........................................................................4

    A. **BACKGROUND** ................................................................................4

    **B. ABOUT XCENTRIC** ..........................................................................5

**ARGUMENTS**

    **POINT I**

        **XCENTRIC IS SUBJECT TO PERSONAL
        JURISDICTION IN NEW YORK** ...........................................................8

        A. THE STANDARDS APPLICABLE TO THIS MOTION ....................8

            1.  Burden of Proof........................................................................8

            2.  New York State Long Arm Jurisdiction ....................................9

            3.  Energy Automation Systems, Inc.
               v. Xcentric Ventures LLC.......................................................14

            4.  The Exercise of Personal Jurisdiction
               will not Violate Due Process....................................................16

    **POINT II**

        **XCENTRIC HAS FAILED RAISE ANY ISSUES
        WHICH WOULD PRECLUDE THIS COURT FROM
        EXERCISING PERSONAL JURISDICTION** .....................................17

    **POINT III**

        **CAMBRIDGE IS ENTITLED TO
        JURISDICTIONAL DISCOVERY** .......................................................19

**CONCLUSION** ..........................................................................................20

# TABLE OF AUTHORITIES

### FEDERAL CASES

*Bensusan Rest. Corp. v. King,*
   126 F.3d 25 (2d Cir 1997)............................................................................................9

*Best Van Lines, Inc. v. Walker,*
   2007 WL 1815511 (2d Cir. 2007)........................................................................10, 16

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)..................................................................................................16

*Citigroup Inc. v. City Holding Co.,*
   97 F. Supp.2d 549 (S.D.NY. 2000).............................................................................11

*Drake v. Laboratory Corp. of America Holdings,*
   Slip Copy, 2007 WL 1704643 (E.D.N.Y. 2007) .........................................................19

*Energy Automation Systems, Inc. v. Xcentric Ventures, LLC,* Slip Copy, 2007 WL
   1557202 *8 (M.D. Tenn. 2007) .............................................................2, 14, 15, 18, 19

*George S. May Int'l Co. v. Xcentric Ventures LLC,*
   409 F. Supp.2d 1052 (N.D. Ill. 2006) ..............................................................5, 11, 17

*Houston Community Hospital v. Blue Cross and Blue Shield of Texas, Inc.,*
   481 F.3d 265 (5th Cir. 2007) .....................................................................................18

*HyCite Corp. v. Badbusinessbureau.com,*
   418 F. Supp.2d 1142 (D. Ariz. 2005) ...........................................................................4

*In re Ski Train Fire In Kaprun, Austria,*
   230 F. Supp. 2d 376 (S.D.N.Y. 2002)...........................................................................9

*In re World Trade Center Disaster Site Litigation,*
   469 F. Supp.2d 134 (S.D.N.Y. 2007)..........................................................................18

*MCW, Inc. v. Badbusinessbureau.com LLC,*
   2004 WL 833595 (N.D. Tex. 2004).............................................................................18

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,*
   84 F.3d 560 (2d Cir.1996)............................................................................................9

*PDK Labs, Inc. v. Friedlander,*
   103 F.3d 1105 (2d Cir. 1997)........................................................................................9

*Photoactive Prods., Inc. v. AL-OR Int'l Ltd.*,
  99 F. Supp. 2d 281 (E.D.N.Y. 2000) ......................................................................... 8-9

*Sole Resort S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
  450 F.3d 100 (2d Cir. 2006)........................................................................................10

*Thomas Pub. Co. v. Industrial Quick Search, Inc.,*
  237 F. Supp. 2d 489 (S.D.N.Y. 2002)...........................................................................9

**STATE CASES**

*McKee Elec. Co. v. Rauland-Borg Corp.,*
  229 N.E.2d 604 (1967)..........................................................................................10, 16

*Modica v. Westchester Rockland Newspapers, Inc.,*
  283 N.Y.S.2d 939 (Sup. Ct. Westchester County 1967).............................................10

*Ryan v. New York Tel. Co.,*
  62 N.Y.2d 494 (1984) ..........................................................................................11, 18

*Sovik v. Healing,*
  665 N.Y.S.2d 997 (4th Dep't 1997)..............................................................................10

**FEDERAL STATUTES**

Consumer Decency Act, 47 U.S.C. §230.....................................................................1, 17

Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* .4

**STATE STATUTES**

CPLR § 301................................................................................................................ 1-2

CPLR § 302(a)(1) .................................................................................................. Passim

CPLR § 302 (a)(2) and (3) .........................................................................................1, 17

**RULES**

Fed. R. Civ. P. 12(b)(2)..........................................................................................5, 8, 20

**CONSTITUTIONAL PROVISIONS**

Fourteenth Amendment ...................................................................................................16

Plaintiff Cambridge Who's Who Publishing, Inc. ("Cambridge") respectfully submits this Memorandum of Law in opposition to the motion to dismiss for lack of personal jurisdiction made by defendant Xcentric Ventures LLC ("Xcentric"), and in support of Cambridge's motion for jurisdictional discovery.

## SUMMARY OF ARGUMENT

Xcentric, taking an exceedingly narrow view of Cambridge's claims and the supporting facts, asserts that this Court lacks personal jurisdiction over it because Xcentric, a non-resident website owner, merely publishes statements made by third party users. Indeed, because Xcentric misstates the law, misrepresents the facts, and predicates its argument on the wrong sub-section of New York's long arm statute, this Court has sufficient basis to deny Defendant's motion in its entirety and exercise jurisdiction over the Defendant.

In its motion, Xcentric argues that New York lacks jurisdiction over Xcentric because the website is insufficient to confer general jurisdiction under the "doing business" standard (CPLR § 301) or long arm jurisdiction under CPLR § 302 (a)(2) and (3). In doing so, Xcentric simply ignores the fact that it is a highly interactive website which offers services to public and private businesses (some free and some for a fee) thereby "transacting business" in New York as defined pursuant to CPLR § 302(a)(1). In addition, Xcentric also manipulates the provisions of the Consumer Decency Act, 47 U.S.C. §230, to argue that Xcentric is immune from suit, when the statute has been viewed to provide only a defense to liability, not jurisdiction.

1

Cambridge does not argue that this Court has jurisdiction pursuant to CPLR §§ 301, or 302 (a)(2) and (3). Cambridge maintains that the interactivity of Xcentric's website, unequivocally establishes that Xcentric "transacts business" pursuant to CPLR § 302 (a) (1). Indeed, the Second Circuit has held, in the context of website defamation claims, that the level of a website's interactivity is a consideration when establishing that a non-resident website owner transacts business in New York. Notably, the District Court in *Energy Automation Systems v. Xcentric Ventures LLC,* Slip Copy, 2007 WL 1557202 (M.D. Tenn. 2007), has already found that the Tennessee courts can exercise jurisdiction over Xcentric based upon the same standard adopted by the Second Circuit.

Through the allegations in its complaint and the admissions of Defendant, Cambridge has demonstrated that Xcentric's website is highly interactive, thereby supporting a finding that Xcentric transacts business in New York pursuant to CPLR § 302 (a)(1) as interpreted by the Second Circuit. While Defendant continuously argues that its website is merely passive, Defendant's an argument has failed in other district courts. Certainly, Xcentric cannot and in fact does not refute that its website offers a variety of services to its users, such as:

- Membership of Rip-off Report's Corporate Advocacy Program;

- Payment to submit certain rebuttals on the website;

- Allowing users to categorize their reports under various headings and to target their search to a specific state or category;

- Selling products and recommending tactics to assist consumers in prevailing in their disputes with companies;

2

- Exercising editorial control over the content published on the Rip-off Website;

- Soliciting donations from users and visitors of the website to support Xcentric;

- Organizing class action lawsuits for its users;

- Marketing and offering for sale of two consumer advocacy books;

- Selling advertising space and soliciting advertisements;

Individually, these services may be insufficient to establish that the website is highly interactive. However, taken collectively, these services allow the exchange of information between users in New York and the defendant. As such, it is appropriate to find that Xcentric has purposefully availed itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.

Further, it is undisputed that Cambridge's claims arise out Xcentric's transaction of business through its website. Indeed, Cambridge's claims arise not only out of the defamatory material published on Defendant's Website, but also from the fact that Cambridge was a targeted company. As a targeted company Cambridge was coerced by Defendant's extortion scheme (otherwise known as the Corporate Advocacy Program) and paying "protection money" to Defendant in order to be portrayed in a positive light. Thus, the exercise of jurisdiction over Xcentric is permissible under CPLR § 302(a)(1) and the Due Process Clause.

While Plaintiff believes it has established a *prima* facie case for personal jurisdiction, at a minimum, Cambridge has set forth more than a sufficient foundation upon which personal jurisdiction against Xcentric may be established. Based upon the

3

above, Cambridge requests, in the alternative, that if this Court finds that Plaintiff has not established a *prima facie* case for jurisdiction over Defendant, this Court allow jurisdictional discovery rather than granting Defendant's motion to dismiss.

## STATEMENT OF FACTS

### A. BACKGROUND

This action, commenced by Cambridge on December 12, 2006, arises out of the unlawful activity perpetrated by Defendants, Xcentric and Edward Magedson ("Magedson"), against Cambridge and others as a result of their operation of a website known as "Rip-off Report.com." Complaint, Exhibit A. Xcentric has published at least fourteen consumer reports about Cambridge's business, some of which were made by New York consumers. These reports contain negative, false, deceptive, misleading and defamatory information about Cambridge. Complaint at ¶ 40. When consumers search for Plaintiff on the Internet, they are directed to Defendant's website, which subjects the consumers to the defamatory reports. Complaint at ¶ ¶ 40, 41, 42.

Cambridge seeks to recover damages, injunctive and other relief, arising out of Defendants' wrongful, tortious and illegal acts against Cambridge. Specifically, Cambridge asserts claims under the theories of defamation, violation of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*[1], trademark infringement, tortious interference with contract, tortious interference with prospective economic gain, and conspiracy to injure in trade, business and reputation as a result of Defendants' publication of false, inaccurate and defamatory material and the unlawful services Xcentric offer on its website to purportedly "clear" your name.

---

[1] Notably, a RICO action against Defendant has, under strikingly similar circumstances, survived a motion to dismiss. *HyCite Corp. v. Badbusinessbureau.com*, 418 F. Supp.2d 1142 (D. Ariz. 2005).

Instead of answering the complaint, Xcentric filed a motion pursuant to Fed. R. Civ. P. 12(b)(2), based on lack of personal jurisdiction. Ex. B. Upon information and belief, Xcentric is a limited liability company organized under the laws of the State of Arizona, with its principal place of business in the State of Arizona. Complaint at ¶ 14.

## B. ABOUT XCENTRIC

Xcentric does business under a variety of names, including, among others, RIP-OFF REPORT, and/or RIPOFFREPORT.COM, and/or Bad Business Bureau, and/or BADBUSINESSBUREAU.COM. Xcentric is the registered owner of the Internet domain names "ripoffreport.com" and badbusinessbureau.com." Both domain names provide access to a website operating under the name "Rip-off Report.com" (the "Rip-off Website"). Xcentric and Magedson, the principal and managing official of Xcentric, have created and continue to maintain and publish the Rip-off Website knowing that it is available for access to, and will be visited by, persons in New York, throughout the United States and worldwide. Complaint at ¶¶ at 15, 18, and 19.

The Rip-off Website purports to advocate on behalf of consumers. It claims to be a "worldwide consumer reporting website and publication, by consumers for consumers to file and document consumer complaints about "companies or individuals who rip off consumers." Complaint at ¶ 27. Essentially, the Rip-off Website provides a forum in which consumers may accuse companies and individuals of various "rip-off" and "bad business" practices.

In operating the Rip-off Website, Xcentric encourages individuals to submit reports critical of business with whom they have dealt. The Website enables users to submit "rip off reports" about specific businesses. Complaint at ¶ 30. Moreover, the Rip-

off Website allows individuals to categorize their reports under various headings and

search reports by categories and states, including New York. Complaint at ¶ 30.

Contrary to Defendant's assertions, upon information and belief, Defendant

exercises editorial control over the content published on the Rip-off Website through one

or more of the following actions:

- Defendant includes additional language which they add
  to complaints to imply that the company named in such
  complaint is "ripping off" consumers.

- Defendant often tailors and rewrites the complaints
  themselves, adding words such as "ripoff," "dishonest,"
  and "scam," notwithstanding the nature of the
  complaint, after which Defendant has someone
  anonymously, post the complaint on Defendant's
  website.

- Defendant creates fictional, false and defamatory
  complaints themselves, which are then attributed to
  people with false names or "anonymous" titles from
  fictional locations around the United States.

- Once complaints from consumers are received,
  Defendant reviews them and actively selects which
  complaints to publish on the Rip-off Website.

- In Defendant's selection process, they include a large
  number of negative comments but generally omit
  positive comments.

Complaint at ¶ 31.

Defendant does not verify the complaints for accuracy. Instead, Defendant

simply publishes the chosen negative, fabricated and edited complaints. Complaint at ¶

32.

Upon information and belief, the Rip-off Website purports to allow targeted

companies to submit rebuttals, but Defendant will only post the rebuttals in accordance

6

with editorial guidelines that are more stringent than those applied to consumer complaints. Upon information and belief, the rebuttals are not posted free of charge. Complaint at ¶ 34.

Xcentric also offers a "service" known as the Consumer Advocacy Program ("CAPS") to targeted companies that are confronted with the negative, false, deceptive, misleading and/or defamatory information published on the Rip-off Website. In return for a significant fee paid by the targeted company, Defendant will author and publish positive editorials in response to the negative, false, deceptive and misleading reports previously published on the Rip-off Website. Only upon payment for this "protection" service, does Defendant attempt to verify the reports they have previously published in order to "expose those posted erroneously." Complaint at ¶ 35.

Once a targeted company buys into their CAPS program, Defendant purportedly undertakes to verify the published complaints. Defendant claims that complaints which they verify are then resolved using part of the money paid for "joining" the CAPS program. Complaint at ¶ 36.

Once Defendant has completed the purported verification process and paid the determined monetary amounts to resolve the so-called "verified" complaints, the targeted business is then required to pay another fee to Defendant before Defendant will note on the Rip-off Website that the business has accepted its responsibility and resolved the consumers' complaints that appear on the website. Complaint at ¶ 38.

In addition to the above, Defendant uses the Rip-off Website to solicit donations from visitors to the site including, but not limited to, residents of New York. Upon information and belief, these "donations" are income producing sources for Defendant

7

and are not used in furtherance of consumer advocacy as represented on the Rip-off Website. Complaint at ¶ 46.

Moreover, upon information and belief, Defendants sell advertising space on the Rip-off Website and solicit advertisers within the state of New York. Complaint at ¶ 47. The Rip-off Website also offers services to consumers through its advertisements, it recommends tactics for consumer complaints, and it offers to organize lawsuits.

Finally, in addition to receiving and publishing these purported consumer reports, visitors to the Rip-off Website are encouraged to purchase Defendants' "Rip-Off Revenge Guidebook" and can follow a link to another website operated by Defendants, www.ripoffrevenge.com, where they may purchase a copy using a credit or debit card through a PayPal account. Complaint at ¶ 48. In addition, visitors are also encouraged to purchase another consumer advocacy book known as "what Mortgage Brokers Don't Want You to Know." Both books are marketed and can be purchased through the website.[2]

## **ARGUMENTS**

### **POINT I**

### **XCENTRIC IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK**

A. THE STANDARDS APPLICABLE TO THIS MOTION

1. *Burden of Proof.*

In opposing a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12 (b)(2) for lack of personal jurisdiction, the plaintiff has the burden of demonstrating that the court has jurisdiction over the defendant. *Photoactive Prods., Inc. v. AL-OR Int'l*

---

[2] *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss at 15.

*Ltd.*, 99 F. Supp. 2d 281, 286 (E.D.N.Y. 2000).    In the absence of discovery, a plaintiff

may defeat such a motion merely by making a "prima facie showing of jurisdiction." *Id.*

at 286; *see Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d

Cir.1996); *In re Ski Train Fire In Kaprun, Austria*, 230 F. Supp. 2d 376, 381 (S.D.N.Y.

2002); *Thomas Pub. Co. v. Industrial Quick Search, Inc.*, 237 F. Supp. 2d 489, 491

(S.D.N.Y. 2002).    At this early stage of litigation, a plaintiff may rely upon the complaint,

affidavits, and other supporting material and the court must construe the pleadings and

affidavits in a light most favorable to Plaintiff and all doubts must be resolved in

Plaintiff's favor.    *See PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.

1997).

   In New York, a court may exercise personal jurisdiction over any non-resident

defendant when personal jurisdiction is appropriate under the New York State long arm

statute and under the due process requirements. *See Bensusan Rest. Corp. v. King,* 126

F.3d 25, 27 (2d Cir 1997).[3]

    2.   *New York State Long Arm Jurisdiction.*

   New York's long arm statute allows for long arm jurisdiction over a non-

domiciliary if the non-domiciliary transacts business in the state and the claim arises out

of that business transaction. C.P.L.R. § 302(a)(1).   New York courts have interpreted

"transacting business" to confer jurisdiction over a non-resident defendant that

purposefully avails itself of the privilege of conducting activities, within the forum State,

---

[3]   Defendant contends that, notwithstanding New York's long arm statute, this Court lacks personal
jurisdiction based upon the fact that the Rip-off Website contains a forum selection clause.  It is
respectfully submitted that the validity of this forum selection clause is irrelevant to this lawsuit as
Cambridge was not a "user" of the Rip-off Website and did not submit any reports or rebuttals. Thus,
Cambridge did not agree to any forum selection clause.

thus invoking the benefits and protections of its laws. *See New Angle Pet Products, Inc. v. MacWillie's Golf Products, Inc.,* Slip Copy, 2007 WL 1871345 (E.D.N.Y. 2007); *McKee Elec. Co. v. Rauland-Borg Corp.,* 229 N.E.2d 604, 607 (1967).

In addition, upon a showing that defendant transacts business in New York, the plaintiff must establish that the cause of action arises from that transaction of business. More specifically, the courts require that there is some articulable nexus between the business transacted and the cause of action sued upon. *See Sole Resort S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006).

Xcentric erroneously asserts that "the long arm statute specifically states that defamation by an out of state resident is not activity that can support long arm jurisdiction."[4] To the contrary, New York courts have upheld jurisdiction over non-residents that have engaged in conduct that involved defamation when there was additional conduct that also occurred in New York. *See Sovik v. Healing,* 665 N.Y.S.2d 997 (4th Dep't 1997); *Modica v. Westchester Rockland Newspapers, Inc.,* 283 N.Y.S.2d 939 (Sup. Ct. Westchester County 1967).

While these cases do not involve defamation via the Internet, recently, there has been considerable case law analyzing the determination of the "transacting business" standard pursuant to CPLR § 302(a)(1) with regard to defamatory websites. The Second Circuit has held that a defendant's website's interactivity is useful in determining whether the defendant transacts business in New York when analyzing a case of website defamation under the transacting business provision of CPLR 302(a)(1). *See Best Van*

---

[4] *See* Defendant's Memorandum of Law in Support of its Motion at 9.

*Lines, Inc. v. Walker,* 2007 WL 1815511 (2d Cir. 2007).[5]    Website interactivity has been

classified under a spectrum of potential website contacts with a forum state, ranging from

"passive" websites, which merely display information and therefore are unlikely to

support jurisdiction, to "commercial" websites which clearly allow the defendants to

transact business in the forum state over the internet and thus sustain jurisdiction. *See*

*Citigroup Inc. v. City Holding Co.,* 97 F. Supp.2d 549, 564 (S.D.NY. 2000).  The middle

of the spectrum contains interactive websites that allow the exchange of information

between users in the forum state and the defendant.  This interactivity may be the basis

for jurisdiction depending on the level and nature of the exchange. *Id.* At 565.

Despite the holding of the District Court in the Northern District of Illinois that

the Rip-Off Website is an Interactive Website,[6] Defendant shamelessly alleges that its

website is passive.[7] *See George S. May Int'l Co. v. Xcentric Ventures LLC,* 409

F.Supp.2d 1052, 1059 (N.D. Ill. 2006) (finding that the Rip-off Website falls into the

middle ground on the spectrum as the site allows users to post messages (to which

defendant sometimes responds) purchase books, make donations, offer consumer

advocacy advice).  Indeed, the online activities of the Rip-off Website are not limited to

defamatory postings regarding Cambridge and other companies.  To the contrary, while

Defendant denies that it "authored" any report about Cambridge, Defendant does not

---

[5]  The Second Circuit in this case held that the court lacked personal jurisdiction over a website operator
that published defamatory language.  However, the facts of this case are completely distinguishable from
the instant case in that the defendant's website was considered a passive website as it merely posted
information, and did not offer or provide the services that the Rip-off Website provides.

[6]  Indeed, the doctrine of issue preclusion bars Defendant from relitigating this issue as it is the identical
issue that was raised in the Illinois proceeding, it is decisive in the present action and Defendant had a full
and fair opportunity to litigate the issue. *See Ryan v. New York Tel. Co.*, 62 N.Y.2d 494 (1984).

[7]  Defendant's citation of cases to support its contention that the Rip-off Website is a passive website
misses the mark. *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss as 18.  As set
forth more fully above, the Rip-off Website does not merely publish defamatory material, but offers a
variety of services to consumers accessing the website.

11

deny or otherwise refute that it exercises editorial control over the content that appears on the Rip-off Website. Specifically, in its complaint Cambridge alleges, upon information and belief, that Defendant (i) includes additional language which it adds to complaints to imply that the company named in such complaint is "ripping off" consumers; (ii) tailors and rewrites the complaints themselves, adding words such as "ripoff," "dishonest," and "scam," notwithstanding the nature of the complaint, after which Defendants have someone anonymously post the complaint on Defendants' website; (iii) creates fictional, false and defamatory complaints themselves, which are then attributed to people with false names or "anonymous" titles from fictional locations around the United States; (iv) reviews complaints and actively selecting which complaints to publish on the Rip-off Website; and (v) includes a large number of negative comments but generally omitting positive comments. Curiously, Defendant fails to refute any of these allegations in its motion papers.

Further, a review of the Rip-off Website establishes that Xcentric provides a host of services to the public and private businesses in the state of New York. It allows individuals, including those from New York, to categorize their reports under various headings and search reports by categories, it recommends tactics for consumer complaints, it offers to organize lawsuits, it markets and offers for sale two books, one of which was authored by Magedson,[8] and through its advertisements, it offers companies private services. Moreover, Xcentric admits that not only is the Rip-off Website,

---

[8] Defendant admits that Defendant markets two books on the Rip-off Website. *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss at 15. Defendant argues that the marketing, sale and shipment of these books are not sufficient to support a finding of general jurisdiction. However, Cambridge contends that this conduct, in addition to the conduct set forth above, supports a finding that Xcentric transacts business in New York pursuant to CPLR 302 (a)(1) and therefore their exists specific jurisdiction. *See Energy Automation Systems, Inc. v. Xcentric Ventures, LLC,* Slip Copy, 2007 WL 1557202 *8 (M.D. Tenn. 2007) (finding specific jurisdiction over Xcentric).

accessible by New York resident and solicits New York residents, there are approximately 17,000 reports on the Rip-off Website that are about companies that the author identified as a New York company.[9]

Even more significant, and contrary to Xcentric's assertion,[10] Xcentric does engage in commercial transactions via the Internet. Upon information and belief, Xcentric allows and encourages targeted companies to submit rebuttals as long as the targeted company pays a fee to Xcentric. As Defendant acknowledges that there are approximately 17,000 reports about New York companies.[11] Thus, it is reasonable to assume that Defendant receives substantial revenue from New York companies as a result of this business practice.

In addition, Defendant has created the "Rip-off Report Corporate Advocacy Program," ("CAPS") pursuant to which, for a fee, the Defendant will investigate Rip-off Reports targeting member companies and post more prominent rebuttals to those reports. Once a business buys into the CAPS program, Defendant purportedly undertakes to verify the published complaints. Defendant claims to resolve the complaint for a concocted and arbitrary monetary value plus a premium ostensibly to compensate the complaining consumer for their inconvenience.

Once Defendant has completed the purported verification process and has paid the determined monetary amounts to resolve the so-called "verified" complaints, the targeted business is then required to pay another fee to Defendant before Defendant will note on

---

[9] Once again, Defendant attempts to argue that this conduct is insufficient to support a finding of general jurisdiction; however Plaintiff is asserting this conduct supports a finding of specific jurisdiction pursuant to CPLR 302(a)(1).

[10] *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss at 20.

[11] *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss at 15.

the Rip-off Website that the business has accepted its responsibility and resolved the

consumers' complaints that appear on the website. In its motion, Defendant fails to deny

that targeted New York companies have enrolled in CAPS and paid the required fees to

Defendant to obtain Defendant's protection services.

Certainly, in light of the services Xcentric provides, as well as the revenue it

ultimately receives from New York consumers, it is reasonable to assume that the Rip-off

Website is sufficiently interactive to support a finding that Xcentric transacts business in

the State of New York.

In addition, Defendant cannot and does not refute that there is a nexus between

the business Defendant transacts and Cambridge's claims. Cambridge's claims stem

from both the defamatory content published on the Rip-off Website and Xcentric's

extortion scheme which is centered around the publication of defamatory content

concerning Cambridge and other targeted companies and Xcentric's effort to extract

"protection money" from Cambridge and other victims in order to portray these

businesses in a positive light. Thus, it must be found that Cambridge's claims arise from

Xcentric's in-state activities-- the operation of the Rip-off Website.

3.      *Energy Automation Systems, Inc. v. Xcentric Ventures LLC.*

It is of singular significance that other federal courts have been faced with the

same issue regarding the exercise of personal jurisdiction over Xcentric as a result of

Xcentric's Internet activities. In the most recent case *Energy Automation Systems, Inc. v.*

*Xcentric Ventures, LLC,* Slip Copy, 2007 WL 1557202 (M.D. Tenn. 2007) the United

States District Court for the Middle District for Tennessee denied Defendant's motion to

dismiss for lack of personal jurisdiction and held that the court could exercise personal

jurisdiction over Xcentric on the basis that (i) Xcentric has purposefully availed itself of the privilege of acting in the forum state; (ii) the claims against Xcentric arise from Xcentric's activities with the forum state because the claims stem from the website on which the defamatory statements about the plaintiff were made ; and (iii) the exercise of jurisdiction over Xcentric was reasonable under the circumstances.

Like Cambridge, Energy Automation Systems, asserted claims, such as defamation, interference with business relations and civil conspiracy, based upon defamatory and false messages posted on the Rip-off Report Website. The Court analyzed the interactivity of the Rip-off Report Website and concluded that personal jurisdiction was proper. A review of the case demonstrates that Xcentric's contacts to Tennessee are substantially similar to Xcentric's contacts to New York. Moreover, the standard used to review the exercise of personal jurisdiction in the State of Tennessee is similar to the standard used in the state of New York. Although worded slightly differently, in both states the plaintiff must establish (i) purposeful activity -- "some act by which the defendant purposefully avails itself of the privilege of conducting activities, within the forum State, thus invoking the benefits and protections of its laws; and (ii) is some articulable nexus between the business transacted and the cause of action sued upon, to support a finding of personal jurisdiction over a non-domiciliary defendant.

Thus, it is respectfully submitted that this Court consider the findings set forth in *Energy Automation Systems, Inc. v. Xcentric Ventures, LLC,* Slip Copy, 2007 WL 1557202 (M.D. Tenn. 2007) and hold that the interactivity of the Rip-off Website provides a sufficient basis for this Court to exercise personal jurisdiction over Defendant.

    4.   *The Exercise of Personal Jurisdiction will not Violate Due Process.*

15

It is respectfully submitted that in New York, the standard of proof necessary to establish the exercise of personal jurisdiction over a non-domiciliary defendant pursuant to CPLR § 302(a)(1) is based upon due process principles. Indeed, to exercise personal jurisdiction over out of state defendants, the Due Process Clause of the Fourteenth Amendment requires a determination that the defendant has purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that the defendant should reasonable anticipate being haled into court there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (citations omitted). As set forth above, when analyzing whether an out of state defendant transacts business in New York, pursuant to CPLR § 302(a)(1), the courts determine whether the defendant engaged in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *McKee Elec Co. v. Rauland-Borg Corp.,* 20 N.Y.2d at 382. This language was adopted by the New York Court of Appeals from the United States Supreme Court when analyzing constitutional limitations on state's power to assert personal jurisdiction over out of state defendants. *Best Van Lines, Inc. v. Walker,* 2007 WL 1815511 (2d Cir. 2007). Thus, because Cambridge has established that the interactivity of the Rip-off Website is sufficient to provide a basis for long arm jurisdiction under CPLR 302 (a)(1), this court should find that it would not be unreasonable that Xcentric would be subjected to the courts of the State of New York based upon its transaction of business in New York.

While Defendant contends that it may be burdened by defending a lawsuit in New York, Defendant readily admits, that the Rip-off Website publishes information on New

York companies, including Cambridge, and permits consumers to target or search

companies in a specific state, such as New York. Moreover, Defendant does not deny

that the Rip-off Website publishes reports from New York residents and others accusing

Cambridge of scamming, ripping off customers and treating consumers unfairly. Thus, it

is undeniable that New York has a significant interest in adjudicating this case and

protecting its businesses. Accordingly, this Court should find that the principles of Due

Process would not be violated by exercising personal jurisdiction over Xcentric. *See*

*George S. May Int'l Co. v. Xcentric Ventures LLC,* 409 F. Supp.2d 1052, 1059 (N.D. Ill.

2006) (finding that Xcentric's Internet activities more than satisfy the due process

standard).

## POINT II

### XCENTRIC HAS FAILED TO RAISE ANY ISSUES WHICH WOULD PRECLUDE THIS COURT FROM EXERCISING PERSONAL JURISDICTION

In its motion to dismiss for lack of personal jurisdiction, Xcentric alleges that

New York lacks any basis to exercise personal jurisdiction under CPLR §§301, 302 (a)(2)

and 302 (a)(3). As demonstrated above, it is Cambridge's position that this Court should

exercise jurisdiction over Xcentric pursuant to CPLR § 302 (a)(1) and therefore, this

Court should disregard Xcentric's arguments.

In addition to the above, Xcentric also argues that this Court lacks personal

jurisdiction as a result of the Communications Decency Act, 47 U.S.C. §230 (the

"CDA"). Specifically, Xcentric contends that pursuant to the CDA, Defendant cannot be

held liable for information posted online by third parties and therefore the court lacks

jurisdiction over it. Not only does Xcentric's exceedingly narrow interpretation of the

CDA fail as a defense to the merits of Cambridge's claims[12], for the purposes of this

motion, Xcentric's argument fails as a defense to personal jurisdiction.

    Not surprisingly, in *Energy Automation Systems v. Xcentric Ventures LLC,*

Defendant also raised the CDA as a defense to personal jurisdiction.[13]  The District Court

completely rejected this argument and stated that "it is important that the court not

confuse questions of jurisdiction with questions of liability on the merits." *Id.* at *12.

The court went on to hold that:

> Although courts speak in terms of "immunity" with regard
> to the protections afforded by the CDA, this does not mean
> that the CDA has created 'immunity from suit' or otherwise
> implicated this court's personal jurisdiction.  Rather, the
> CDA has created a broad defense to liability.  Whether or
> not that defense applies in any particular case is a question
> that goes to the merits of that case, and not to the question
> of jurisdiction.

*Id.* at *13 (citations omitted)(emphasis added).

    It is well settled that immunity from liability on the merits is separate and distinct

from immunity from suit. *See Houston Community Hospital v. Blue Cross and Blue*

*Shield of Texas, Inc.,* 481 F.3d 265, 280 (5th Cir. 2007) (stating that federal sovereign

immunity is an immunity from damages only); *In re World Trade Center Disaster Site*

*Litigation,* 469 F. Supp.2d 134 (S.D.N.Y. 2007) (finding that the New York State

Defense Emergency Act and the New York State and Local Natural Disaster and Man-

---

[12] The District Courts in *Hy Cite Corp. v. Badbusinessbureau.com*, 418F.Sup..2d 1142 (D. Ariz. 2005) and *MCW, Inc. v. Badbusinessbureau.com LLC,* 2004 WL 833595 (N.D. Tex. 2004) both held that Xcentric was not entitled to immunity under the CDA where the plaintiff alleged that the wrongful content appears in editorial comments created by Xcentric and titles to Rip-off Reports, which Xcentric allegedly provides, just as  Cambridge has alleged in the instant lawsuit.  Specifically, in *Hy Cite,* the court stated that the "allegations could support a finding that Defendants are 'responsible . . . for the creation or development of information' provided by individuals submitting Rip-off Reports." *Id.* At 1149.

[13] Once again, Defendant should be precluded from relitigating this issue under the doctrine of issue preclusion.  See Ryan v. New York Tel. Co., 62 N.Y.2d 494 (1984).

Made Disaster Preparedness Law shelters the applicable persons from liability but do not

provide immunity from suit). Similarly, as expressed in *Energy Automation Systems,* the

CDA by its express terms provides a defense to liability for certain persons as defined in

the CDA, however, it does not create a prohibition against being sued. Accordingly,

Xcentric's argument that this court lacks jurisdiction based upon the CDA is without

merit.

## POINT III

### CAMBRIDGE IS ENTITLED TO JURISDICTIONAL DISCOVERY

In the event this Court finds that Plaintiff has failed to set forth a *prima facie* case

for the exercise of personal jurisdiction over Defendant, it is respectfully requested that

this Court grant Plaintiff the opportunity to engage in jurisdictional discovery.

Jurisdictional discovery is appropriate in circumstances where a plaintiff may not have

made less than a *prima facie* showing of personal jurisdiction, but has made a sufficient

start to establishing personal jurisdiction. *See Drake v. Laboratory Corp. of America*

*Holdings,* Slip Copy, 2007 WL 1704643 (E.D.N.Y. 2007) (citations omitted).

Indeed, Cambridge has set forth more than a sufficient start to establish personal

jurisdiction against Xcentric. Notwithstanding, Cambridge believes that there exists even

more information warranting a jurisdictional basis in New York exists which Xcentric

has in its possession. While this information is not necessary to decide the instant motion

in favor of Plaintiff, it is respectfully submitted that if this Court finds that Plaintiff has

not met its burden of proof, this Court should allow Plaintiff to engage in jurisdictional

discovery to obtain information from Xcentric relating to its contacts with New York,

including without limitation, the number of New York companies that have been targeted

on Defendant's website; the number of New York members of the Defendant's website, the number of New York companies that participate in the Corporate Advocacy Program; the amount of revenue Defendant has received from New York user and members of the Corporate Advocacy Program; the amount of book sales to New York residents; and the amount of revenue received from New York advertisers.

Based upon the above, Cambridge requests, in the alternative, this Court allow jurisdictional discovery prior to rendering a determination that this Court lacks jurisdiction over Defendant.

**CONCLUSION**

For all of the foregoing reasons, Xcentric's motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(2) should be denied in its entirety. Alternatively, Cambridge's motion for jurisdictional discovery should be granted.

Dated: Garden City, New York
      July 27, 2007

ETTELMAN & HOCHHEISER, P.C.

By: _____
      Suzanne B. Fertig (SF-7107)
Attorneys for Plaintiff
100 Quentin Roosevelt Blvd., Ste 401
Garden City, New York 11530
(516) 227-6300

F:\Empire\Cambridge\Litigation\Xcentric\MOL in opp to motion to dismiss.doc